IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAMELA L. PARSELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-10-1223-M |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications on September 11, 2006, and alleged that she became disabled on August 18, 2000. (TR 112-118). Plaintiff stated that she last worked in 1999. Plaintiff's applications were denied on initial review and on reconsideration. (TR

72-84). At Plaintiff's request, a hearing *de novo* was conducted on August 20, 2008, before Administrative Law Judge Thompson ("ALJ"). (TR 21-71). Plaintiff appeared with counsel and testified at the hearing, and a vocational expert ("VE") also testified. ALJ Thompson subsequently issued a decision (TR 12-20) in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and denied her applications. Plaintiff's request for review of the decision was denied by the Appeals Council. (TR 1-3).

Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination. Plaintiff contends that the ALJ erred in finding that her allegations concerning the disabling nature of her impairments were not credible. Plaintiff further contends that the ALJ erred in evaluating the testimony of the VE. Defendant responds that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence supports the Commissioner's decision.

II. Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). Judicial review of a decision by the Commissioner in a social security case is limited to a determination of whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). In reviewing the decision of the Commissioner, the court may not

reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). The "determination of whether the ALJ's ruling [which becomes the Commissioner's decision] is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

III. ALJ's Decision

Following the sequential evaluation process required of administrative factfinders, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since August 18, 2000, the date on which she alleged she became disabled. (TR 14). The ALJ also found that Plaintiff's insured status for the purpose of disability insurance benefits expired on September 30, 2004. (TR 14, 130, 182). At step two, the ALJ found that Plaintiff had severe impairments due to migraine headaches and degenerative disc disease of the cervical and lumbar spines. (TR 14-15). At the third step, the ALJ found that these impairments were not disabling *per se* under the agency's Listing of Impairments. (TR 15-16). At step four, the ALJ considered whether Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of her previous jobs in light of her vocational characteristics, *i.e.*, age and education, and the physical and mental demands of her previous jobs. The ALJ found that despite her severe impairments Plaintiff retained the capacity to perform a limited range of light work. (TR 16). Specifically, the ALJ reviewed the medical evidence and

Plaintiff's testimony and found that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours of an 8-hour workday, and sit for 6 hours of an 8-hour workday, with postural limitations of not more than occasional stooping and not more than frequent climbing, balancing, kneeling, crouching, or crawling, and with an additional limitation of "weakness in her hand with holding a hammer for an extended period of time." (TR 16-19). Based on the VE's testimony at the hearing concerning the availability of jobs for an individual with Plaintiff's vocational characteristics and RFC for work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform the requirements of her previous jobs of court clerk and legal assistant. (TR 19-20).

IV. Credibility

Plaintiff contends that the ALJ's credibility determination was flawed. At the fourth step of the evaluation process required of administrative factfinders, an ALJ is required to determine whether the disability claimant retains the RFC to perform the requirements of all past relevant work. At this step, the claimant bears the burden of proving an inability to perform the duties of his or her previous jobs. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). The RFC assessment often requires a determination by the ALJ of the credibility of the claimant's subjective statements. Where the Plaintiff has established the existence of an impairment reasonably likely to cause pain or other nonexertional limitations, there are "certain factors an [ALJ] should take into consideration when considering the credibility of pain testimony." Hargis v. Sullivan, 945

F.2d 1482, 1489 (10th Cir. 1991)(listing factors).  However, no "formalistic factor-by-factor recitation of the evidence" is required in making a credibility determination "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

When the medical record reflects an impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, the ALJ must evaluate the intensity and persistence of those symptoms and determine whether the symptoms limit the claimant's ability to work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   To do this, the ALJ must "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  Factors the ALJ may consider in evaluating the claimant's symptoms include "the levels of [her] medication and [its] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [her] medical contacts, the nature of [her] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  See also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). "Credibility determinations are peculiarly the province of the finder of fact," and credibility determinations will not be upset "when supported by substantial evidence.  Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248,

1254 (10th Cir. 2002)(quotations and alteration omitted).

In this case, the ALJ's decision includes a summary of the relevant medical evidence, Plaintiff's testimony, and multiple factors bearing on the issue of Plaintiff's credibility. The ALJ reasoned that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's] [RFC] assessment." (TR 17). In support of this credibility assessment, the ALJ pointed to medical evidence indicating Plaintiff's migraine headaches and cervical and back pain responded to conservative treatment measures, including medications and epidural steroid injections, and also to evidence showing that her physical examinations by treating and consulting physicians did not reflect findings of significant range of motion limitations or neurological deficits. The reports of treating and consulting physicians indicated Plaintiff exhibited normal gait, normal strength, normal joints, and no motor or sensory deficits in the upper extremities. Additionally, the ALJ reasoned that Plaintiff's description of her usual daily activities did not indicate the presence of disabling symptoms or functional limitations. Specifically, the ALJ found that Plaintiff had "helped with her husband's phone business, worked as a substitute teacher and volunteered at her child's school. She ha[d] no problem with her personal care. She [took] care of her children, [drove and took] them back and forth to school and school activities. She [did] laundry, light cleaning, cook[ed] simple meals, [went] shopping, handle[d] money, read[ ] and watche[d] TV. She [went] to church and children's school and sport events." (TR 19). The ALJ pointed to records of Plaintiff's treating psychiatrist that revealed her testimony was not consistent with her statements to the

doctor concerning the extent she was working during 2003 through 2006. The ALJ reasoned that "[t]hese inconsistencies regarding her work activity diminish the claimant's credibility." (TR 19).

Plaintiff contends that the ALJ should not have relied on Plaintiff's statements concerning her usual daily activities because she testified she was not able to perform these activities regularly. Although the "[s]poradic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity," Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011), in this case the ALJ did not rely solely on Plaintiff's subjective statements concerning her usual daily activities. Rather, the ALJ considered and appropriately relied on multiple factors, including the consistency between Plaintiff's statements and the medical record, to determine the credibility of her allegation of disabling pain and limitations.

The ALJ's credibility findings are well supported by the record. Plaintiff testified at the hearing that she stopped working when she became pregnant with her third child and that she was the primary caregiver for her children. Plaintiff indicated to a treating psychiatrist in March 2002 that she was not working because she was caring for her infant child. (TR 282). In December 2002, the treating psychiatrist noted Plaintiff had begun working in her husband's office. (TR 282). However, Plaintiff reportedly stopped working in April 2003 "as there was nothing for her to do and her time [was] too valuable." (TR 283). She stated in July 2003 that she did "not have time to make money" as she had small children. (TR 283). In January 2004, she reportedly was working about twelve hours per week in her husband's

office, and she later stated that would be working there full time after her children's school year began. (TR 286, 289). She stated in July 2005 that she wanted a "real job," and in September 2005 she stated that she was working some and also was busy with her children's school activities. (TR 296-297). She stated in February 2006 that she enjoyed substitute teaching and was able to work only when she wanted to work. (TR 299). In March 2007, Plaintiff reported to the consultative examiner, Dr. Mills, that she had planned to return to work after her last job but that she became pregnant and then had her third child. (TR 335). No doctor opined that Plaintiff was unable to work. Moreover, Plaintiff's treatment records do not indicate that Plaintiff was unable to work or worked fewer hours because of a physical or mental impairment. Rather, her statements reflect her voluntary desire not to work in a full-time position.

Additionally, the medical record is not consistent with her statements of persistent, disabling pain and limitations. Plaintiff informed a treating physician, Dr. Mitchell, in July 2002 that she had experienced "good relief" of her back pain after a lumbar epidural steroid injection in January 2002. (TR 241). There are multiple notations in the medical record from treating physicians in 2002, 2005, 2006, 2007, stating that Plaintiff's neck pain and headaches were largely controlled with medications. (TR 318, 320, 425, 429, 441). Plaintiff was advised to undergo physical therapy in May 2002 and again in October 2005 as treatment for her neck pain. (TR 322, 377). However, there is nothing in the record showing Plaintiff pursued physical therapy. Plaintiff reported to treating physicians that her headaches worsened when she stopped taking the prescribed medication and decreased when

she resumed the medication. (TR 425, 429). X-rays conducted in 2003 and magnetic resonance imaging tests conducted in 2001 showed that Plaintiff had only mild degenerative changes in her cervical and lumbar spines. (TR 367-368, 391). X-rays of Plaintiff's hands showed only mild osteoarthritis. (TR 321). In physical examinations, Plaintiff's treating physicians have persistently noted she exhibited full strength in her upper extremities, full grip strength, normal joints, a safe gait, and no swelling or inflammation in her hands. (TR 239, 256-257, 258-259, 260-261, 268, 271, 320, 322, 336, 391, 443-444). The ALJ appropriately considered medical and non-medical evidence that was inconsistent with Plaintiff's claim of disabling pain. Under these circumstances, the credibility determination should not be disturbed.

V. Substantial Evidence

Plaintiff alleges that the ALJ erred in rejecting the VE's testimony in response to a particular hypothetical question that was favorable to Plaintiff's disability applications. During the hearing, the ALJ posed multiple hypothetical questions to the VE in order to obtain expert testimony concerning job availability. The ALJ first asked the VE to assume an individual of the same age, education, and work experience as Plaintiff who could perform light work with the postural and exertional limitations as found in the RFC. (TR 66). The VE testified that this hypothetical individual could perform Plaintiff's previous jobs as a court clerk or legal assistant. (TR 67). Although the ALJ posed additional hypothetical questions to the VE, the ALJ's hypothetical set forth above adequately reflected the "impairments and limitations that [were] borne out by the evidentiary record," and therefore

no error occurred with respect to the ALJ's reliance on the VE's testimony in support of his step four decision. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  December 12th , 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  22nd  day of  November , 2011.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

10